STATE OF MINNESOTA ex rel. FRANK THOMPSON, Executor, and Another, v. PROBATE COURT OF ROCK COUNTY and Another.[1]

November 20, 1896.

Nos. 10,070—(7).

**Executors and Administrators—Action against Nonresident—Power of Probate Court.**

Where, upon the petition of nonresidents, they have been appointed executors or administrators by a probate court of this state, such court has the power to order that they submit to the service of a summons in a civil action brought in this state for the purpose of determining the liability of the estate they represent on a claim or demand not provable in the probate court in the due course of administration. Whether the remedy in case of a refusal to obey the order is by proceedings as for contempt, or by removal from office, is not decided.

**Estate of Decedent—Contingent Claim—Subscription for Stock.**

T., in his lifetime, subscribed for stock in a corporation organized for pecuniary profit, under the provisions of G. S. 1894, c. 34, tit. 2, paying, it is alleged, only 50 per cent. of par value thereon, the balance of such value being presently due and payable. He died without making such payment, and subsequently the corporation became insolvent, and passed into the hands of a receiver, about the expiration of the period fixed by the court for the presentation of claims against the estate of the deceased shareholder. *Held*, that the claim was one to be presented to the probate court for allowance, under the provisions of G. S. § 4511.

Certiorari by Frank Thompson, as executor, and Joe R. Lane, as administrator with the will annexed, of James Thompson, deceased, against the probate court of the county of Rock and James Marshall, judge thereof, to review an order of said court. Reversed.

[1] Reported in 68 N. W. 1063.

*A. J. Daley*, for relators.
*Ambrose Tighe* and *Stiles W. Burr*, for respondents.

COLLINS, J. This is certiorari to review a proceeding in the probate court for Rock county, which ended in an order of the court adjudging the relators guilty of contempt in failing and refusing to obey an order theretofore made, requiring them to file in said court a power of attorney constituting some suitable resident of said county their attorney to accept service of a summons in an action to be brought against them, in their official capacity, in district court, to determine the liability of the estate of one James Thompson, deceased, on account of an alleged unpaid subscription to the capital stock of an insolvent Minnesota corporation, of which one Farnham was the duly-appointed and qualified receiver.

The deceased was a resident of Iowa at the time of his death, January 1, 1895. He died seised of real estate in Rock county, and possessed, it is averred, of a large quantity of personal property, having situs for the purposes of administration in Minnesota. January 15, the last will and testament of the deceased was probated in the proper county in Iowa, and relator Thompson appointed executor thereof, while relator Lane was appointed administrator with the will annexed, both being residents and citizens of Iowa. A duly-authenticated copy of the will and of its probate was then presented to the probate court of Rock county, and February 12, upon petition, said court admitted such will to probate in Minnesota, and appointed Thompson as executor thereof, and Lane as administrator with the will annexed. By order of date March 2, the court fixed the time within which claims against the estate should be filed; and, while we are unable from the record to determine the precise day on which the time expired, it must have been prior to October 1, 1895, and about the day the receiver was appointed.

February 1, 1896, the attorneys for such receiver presented a verified petition to the probate court for Rock county, setting forth the rendition of a judgment in September, 1895, against the corporation before mentioned, whereby all of its property was sequestrated, and Farnham appointed receiver, in accordance with the provisions of G. S. 1894, § 5897 et seq.; that he had duly qualified and had entered upon his duties; and various other matters tending to show that the

insolvent corporation was indebted in a large sum and that its liabilities far exceeded its assets. This petition also set forth that, in the year 1887, Thompson subscribed for, and there were delivered to him, 700 shares of the capital stock of said insolvent corporation, of the par value per share of $100; that he paid on account of each share the sum of $50, and no more, and that there remained unpaid on each and every one of such shares the sum of $50, with interest. The petition also contained allegations relative to 1,128 shares subscribed for and issued to one Beifield, and sold and transferred by him to Thompson, with full knowledge by the latter that Beifield had paid but $50 on each share. It was also alleged that Thompson held and owned all of these shares at the time of his decease. Other allegations were made in the petition, and it concluded with a prayer that both Thompson and Lane be compelled to subject themselves to the jurisdiction of the district court, that the claim held by the receiver might be determined in the due course of law, and, in the event of their refusal so to do, that they be removed from their trust positions. A hearing was had on this petition, and the probate court granted the order prayed for. Thompson and Lane refused to comply with its terms, and this led to the contempt proceedings heretofore mentioned.

Two questions are presented for our consideration: First. Assuming that the claim set forth in the petition was not one coming within the provisions of G. S. § 4511, and therefore to be presented for allowance in the probate court, had the court the power to compel the relators to subject themselves to the jurisdiction of our courts notwithstanding their nonresidence and absence from the state, that the claim might be passed upon in a proper tribunal, in an action brought for that purpose? Second. Was the claim as presented by the relator of such a character as required it to be proved and allowed or disallowed in the probate court, and in the due course of administration, and consequently one of which the district court could not take cognizance except on appeal?

In answer to the first question, we have no hesitation when saying that the probate court had full power and authority to compel the relators to submit to the jurisdiction of any of our state courts in which it became necessary to bring an action to test the liability of the Thompson estate upon a claim asserted by a resident of this

state. Although nonresidents, the relators had availed themselves of the right conferred in G. S. § 4439, to have the will proved and allowed in this state, and had been appointed to carry out its provisions. It would be absurd to hold that, simply by absenting themselves from our state, they can defy our own citizens, creditors of the estate, and successfully resist all attempts to enforce the collection of all claims against the estate they represent, not collectible in the due course of the probate proceedings. We have no doubt when holding that an adequate and prompt remedy in such a case is in the hands of the probate court; but in view of our conclusion in respect to the second question, which leads to a reversal of the order appealed from, we decline to determine whether the remedy is by proceedings to punish as for contempt, or by removal of the relators.

We have said that the second question is as to the character of the claim made against the estate, and, of course, that is to be determined from the verified petition presented by the alleged creditor, the contents of which on this point have been stated quite fully. From that petition it distinctly appears that, in his lifetime, Thompson subscribed for the shares issued to him, and paid but 50 per cent. of their par value; and that Beifield also subscribed for a certain number of these shares, paid but 50 per cent. of their par value, and then sold and transferred them to Thompson, for not more than what he (Beifield) had paid, Thompson having full notice and knowledge that 50 per cent. of the par value of the shares had not been paid by Beifield.

From these allegations it clearly appears that, when the stock shares were issued and delivered to these subscribers, each immediately became indebted to the corporation for one-half of the par value of the shares subscribed for, and this indebtedness was unconditional, as well as presently due and payable. It depended upon no contingency whatsoever so far as can be gathered from the petition, and there was no impediment in the way of an action to enforce collection. And when Beifield sold and transferred his shares to Thompson, the latter having notice and knowledge of the facts, a cause of action to recover the balance due to the corporation at once accrued. If, then, the indebtedness depended upon no contingency, and the right to recover by suit was unqualified up to the time of Thompson's decease, the claim was one to be presented in the probate court for allowance

and payment in the course of administration proceedings. It was a claim arising on contract. It was certain in amount. It was due absolutely and clearly within the provisions of G. S. 1894, § 4511, which requires that such claims must be presented to the probate court within the time limited by an order of the court theretofore made (which time had expired in this case), and, if not so presented, to be forever barred.

But it is contended by counsel that the insolvency of the corporation creditor, and the appointment of a receiver, changed the nature of this claim, and in some way transferred it from a demand certain in amount, past due, and not dependent upon any contingency, to one uncertain in amount, not yet liquidated, immature, and dependent upon a contingency, namely, the ascertainment of the amount of assets which should come into the hands of the receiver, and the amount of corporative liabilities; that is, that the right of the receiver to enforce collection of the sum due upon the stock subscription depends altogether upon the condition of the insolvent estate when such condition is finally ascertained, and, until the necessity arises and the extent of the necessity is determined, no proceedings looking towards compulsory payment of the unpaid 50 per cent. of the par value of the shares can be instituted. We do not agree to this, and are not aware of any decision in this court which suggests such a contention.

A contingent claim arising on contract, not coming within the provision of G. S. § 4511, and consequently one not capable of being passed upon in the probate court, and there disposed of, has recently been defined in Hantzch v. Massolt, 61 Minn. 361, 63 N. W. 1069, as one which does not become absolute and capable of liquidation before the expiration of the time limited by order of the probate court for the presentation of claims against the estate of one deceased for consideration and allowance or disallowance. An example of such a claim is to be found in that case, and another in Oswald v. Pillsbury, 61 Minn. 520, 63 N. W. 1072. And in the case of Lake Phalen L. & I. Co. v. Lindeke, supra, p. 209, 68 N. W. 974, it was held that a claim presented by a corporation for an amount due on account of stock shares, the subscriber having died after one instalment had been paid, was a contingent claim, not provable in the course of administration, because, according to the articles of incorporation, the par value of the

stock shares was made payable in instalments when called for by the board of directors, and the instalment in question was not called for until after the time fixed for the presentation of claims had passed. It is quite evident that had the amount due been definitely settled by the action of the board in accordance with the articles by the Lake Phalen Company, and an instalment called for prior to the expiration of the period within which creditors were required to present their claims, a different case would have there been before us.

Finally, attention is called to Nolan v. Hazen, 44 Minn. 478, 47 N. W. 155. The plaintiff in that case had obtained a judgment against a corporation organized for pecuniary profit, in accordance with the provisions of G. S. c. 34, tit. 2, §§ 2794–2804. An execution had been issued on the judgment, and returned unsatisfied, the corporation having no assets. A liability on this judgment then existed, by reason of G. S. 1894, §§ 2600, 2796, on the part of all stockholders who had failed to pay in full for their shares; and it was held that the judgment was a provable claim against the estate of one Sleeper, deceased, who in his lifetime owned stock shares, and had not paid therefor. The only difference between the case cited and that at bar is that in the former the corporation had not been formally declared insolvent. As before stated, insolvency and the appointment of a receiver cannot change the character of the claim to be asserted.

It follows from what has been said that the probate court was not authorized to make the order we have been called upon to review. It is therefore reversed, and the case remanded for such further proceedings as may be deemed advisable.